### JOHN R. DARNELL v. JOHN DOLAN.

Decided November 24, December 17, 1910.

**1.—Guaranty—False Representation—Agency.**

A guaranty of the payment of a note, by one not a party to it, made to one purchasing other notes having as security a lien on the same land as, but inferior to, that of the note so guaranteed, was not invalid because induced by a false representation by the seller of such note that another one having a lien on the same land had been paid, it not appearing that the seller of the note had any authority to act for or represent the buyer in making such representation to the guarantor.

**2.—Guaranty—Recital.**

A recital in a written guaranty of payment of a note that another note secured on the same property had been paid, was the representation of such fact by the guarantor to the guarantee, not by the latter to the former, though the instrument was prepared by the attorney for the guarantee.

**3.—Guaranty—Release of Security.**

A guarantor who consents to a contract releasing other security held by the guarantee is not relieved from his liability by such release.

ON MOTION FOR REHEARING.

**4.—Contract—Mistake.**

A mistake of fact, though mutual, does not discharge the promissor where it relates, not to the subject of the contract, but to matters which are merely collateral.

Appeal from the District Court of Tarrant County. Tried below before Hon. Jas. W. Swayne.

*Smith, Turner, Bradley & Powell,* for appellant.—The liability of a surety can not be extended beyond the terms of the contract out of which his obligation arises. Ryan v. Morton, 65 Texas, 258. The clause to the effect that the first five hundred dollar note had been paid in full, having been inserted in the instrument signed by the appellant, Darnell, by a mutual mistake of all parties interested, there was therefore no binding contract. Blaney v. Rogers, 54 N. E., 561; Bank v. Murphy, 31 N. E., 285. The appellant, Darnell, was only bound to the extent

and in the manner and under the circumstances he consented to become liable, and the instrument which he signed showed upon its face that he only consented to become a surety, or agreed to see that Crites would pay the five hundred dollar notes, upon the condition that the first five hundred dollar note had been paid and upon the further condition that Crites, Males and Seibold had agreed to extend the second note, and these conditions being wholly untrue, he was therefore not bound.   Turner v. Oil Co., 50 Texas Civ. App., 468; Brandt, Suretyship and Guaranty, 2d ed., 118, 119; 27 Am. & Eng. Enc. of Law, 2d ed., 459; London & L. Ins. Co. v. Holt, 72 N. W., 403; Standard Oil Co. v. Arnestad, 34 L. R. A., 861; White Sewing Mach. Co. v. Hines, 28 N. W., 157; Dupee v. Blake, 35 N. E., 867.   Dolan and Males having co-operated and finally procuring Crites to convey to Dolan the property in controversy, and Dolan cancelling both the Seibold indebtedness and also the obligation of Crites, and thereby relieving him from any liability, operated as a release of the contract signed by Darnell, admitting that the same had ever been in force or a valid and outstanding contract against Darnell, which liability Darnell at all times resisted.   Mutual L. Ins. Co. v. Wilcox, 8 Bliss, 197; Guarantee Co. of N. A. v. Mechanics Sav. Bank, 183 U. S., 417; Guardian F., etc., Assur. Co. v. Thompson, 68 Cal.., 208; Ind., etc., Live Stock Ins. Co. v. Bender, 69 N. E., 691; Deposit Bank v. Hearne, 104 Ky., 819; Ingraham v. Bank, 13 Mass., 208; St. Louis Third Nat. Bank v. Owen, 101 Mo., 558; Sooy v. State, 39 N. J. L., 135; Dinsmore v. Tidball, 34 Ohio St., 411; Wilmington, etc., R. Co. v. Ling, 18 S. C., 116.

*Wray & Myer,* for appellee.

WILLSON, CHIEF JUSTICE.—June 13, 1906, one Males executed and delivered to one Siebold his (said Males') five promissory notes, aggregating the sum of $3000, and to secure the payment thereof at the same time executed and delivered a deed of trust on lot 9 of an addition to the city of Fort Worth.   One of the notes was for $500, due six months after its date, and another was for a like sum, due one year after its date.   November 2, 1906, Males sold and conveyed the lot to one Crites, who as a part of the purchase price thereof executed and delivered to Males his (Crites') four promissory notes aggregating the sum of $2500, and in addition thereto assumed and undertook to pay to the holder of the Siebold notes mentioned above the indebtedness of Males which they evidenced.   To secure the payment of the notes so executed by Crites a vendor's lien was retained by Males on the lot, and the payment thereof was further secured by a deed in trust on the lot executed and delivered by Crites.   Males afterwards sold the Crites notes to appellee Dolan, who was induced to purchase same in reliance upon a representation made to him by Males that the first of the two notes mentioned above as having been made to Siebold had been paid and in reliance upon an undertaking in writing which Males induced appellant Darnell to enter into, whereby he, appellant, guaranteed the payment by Crites of the

second of the two notes mentioned above as having been made by Males to Siebold. The guaranty as executed by appellant was written by appellee's attorney at appellee's instance, and when written was handed to Males, who induced appellant to execute it. In the instrument was a recital that the first mentioned of said two Siebold $500 notes had been paid. Before executing the instrument appellant inquired of Males if the recital was a true one, and he was informed by Males that it was. As a matter of fact the note had not been paid, but was then held by Siebold and was wholly unpaid. Siebold also held the other of said two $500 notes executed by Males, and the notes having matured and Crites having become insolvent and having failed to pay same, he (Siebold) was threatening to foreclose the trust deed made to secure the two notes, when appellee, then holding the notes made by Crites to Males, which were a lien on the lot subject to the Siebold notes, to save the expense of a foreclosure suit by Siebold and the loss which he expected would result to him (appellee) therefrom, paid to Siebold the amount due on the notes held by him. Just before he so paid same appellee learned for the first time that the representation made to him by Males that the first one due of the two Siebold notes had been paid was untrue. After he had paid same and the other one which appellant had guaranteed Crites would pay, appellee demanded of appellant that he comply with his undertaking and pay the note he had undertaken to pay if Crites did not pay same. Appellant refused to do so. By an arrangement between appellee and Crites, the latter conveyed the lot mortgaged as stated to secure the payment of the notes he had executed and the Siebold notes as well, to appellee, who agreed to cancel the indebtedness against said Crites and relieve him from liability on account of same. Crites at that time was insolvent, and so was Males. The latter assisted appellee in the negotiations with Crites resulting in the cancellation of the indebtedness against him (Crites) held by appellee and the conveyance to the latter of the lot. Appellee invited appellant to participate in the negotiations, and was advised by him that whatever Males might do in the matter would be all right with him. It seems that Males during the time of the transactions mentioned was a "builder and dealer in real estate, constructing houses thereon for sale, and purchased the material entering into their construction from the Darnell Lumber Co.," in which appellant was in some way interested. After the lot had been conveyed by Crites to appellee, the latter again made demand on appellant that he pay the note he had guaranteed that Crites would pay, and offered if he would do so and repay to him (appellee) the balance in excess of said note he had expended on account of the property to convey same to appellant. The proposition was declined by appellant. Afterwards appellee sold and conveyed the property to one Matthew, for its fair market value, realizing therefrom, he testified, about $800 less than he had paid out on account of same. As the result of a suit brought by him against appellant he recovered a judgment against appellant for the sum of $694.65, the amount of the principal, interest

and attorney's fees stipulated for in the note the payment of which the latter had guaranteed.

*After Stating the Facts as Above.*—Appellant insists that he was not liable on the guaranty sued on because he was induced to execute it in reliance on a representation made to him by Males that the one first maturing of the two Siebold $500 notes had been paid, when in fact it had not been paid. But it does not appear from anything in the record that in making the representation Males was authorized to act for, or even that he assumed to act for, appellee. Appellee's rights under the guaranty could not, it should be needless to say, be affected by a misrepresentation made by a person who was without authority to act for him in making it.

Appellant next insists that he was not liable because of a recital in the guaranty that said note had been paid. But the recital was his own, and certainly he should not be heard to complain that it was false. Evidently the insistence is made on the theory that the representation should be treated as having been made by appellee to appellant, because the instrument containing it was written at appellee's instance by his attorney. We think it is plain that such a theory is not maintainable. Appellee was not willing to purchase the notes Males wished to sell to him unless the first of said two Siebold notes had been paid and the payment of the other one by Crites was guaranteed by some one acceptable to him. He was in the attitude of saying to Males: "If you will have Darnell to execute an instrument recited as a fact that the first of the two Siebold notes has been, as you assure me it has been, paid, and guaranteeing the payment by Crites of the other of said notes, I will purchase the notes you propose to sell to me." Appellant did not have a right, because the instrument Males asked him to execute had been prepared by appellee, to treat the recital in question as a representation made by appellee to him to induce him to execute it. On the contrary, he should be held to have known that appellee's purpose in embodying the recital in the instrument was to have him (appellant) to vouch for the truth of the representation. The right to complain because the recital in question was untrue accrued to appellee, and not to appellant. 1 Brandt on Suretyship and Guaranty, secs. 52, 56.

The remaining contention is that appellant was not liable on the guaranty, because, in the negotiations resulting in the conveyance of the lot to appellee (then the holder of all the encumbrances existing on it) by Crites, the lien existing to secure the payment of the second, as well as the others, of said Siebold notes had been cancelled, and Crites had been released by appellee from liability on account of his (Crites') undertaking to pay the same. It is true as a general rule that if the principal debtor is released by the creditor the guarantor is thereby also discharged. It is also true as a general rule that if the creditor relinquishes a lien he has on property of the principal debtor to secure the debt, the guarantor is to the extent of the value of the lien relinquished discharged from liability. 1 Brandt, secs. 164, 480. But it is also true that if the guarantor consents that the principal shall be released

and that the security shall be relinquished, he will not thereby become discharged of liability on his guaranty. I Brandt, secs. 165, 480, and note 12. The trial court found as facts that Males acted with appellee in the negotiations resulting in the release of Crites and the extinguishment of the lien of the Siebold notes on the lot, and that appellant, when requested by appellee to advise with reference to same, replied that "whatever Males did was all right." In view of the judgment rendered, we think this finding should be construed as a finding that appellant consented to and acquiesced in the arrangement made with Crites.

We are of the opinion that error in the judgment rendered has not been shown. Therefore it is affirmed.

### ON MOTION FOR REHEARING.

It is insisted that the conclusion reached by us that appellant had no right to complain because of the falsity of the recital in his guaranty of the payment by Crites of the second of the two Siebold $500 notes, that the first one had been paid, was erroneous and in conflict with the conclusion reached by other courts in a number of cases cited in the motion, presenting, appellant contends, a similar state of facts. Of the cases so cited Blaney v. Rogers, 174 Mass., 277, seems to be most relied upon as being directly in point on its facts. There a recovery, it seems, was sought against a surety on a bond prepared by the plaintiffs' attorneys, for a breach of an undertaking on the part of the principal that certain buildings recited· to be in process of construction upon certain lots "should be finished in good and workmanlike manner." The plaintiffs at the time the bond was prepared by their attorneys and the surety at the time it executed the bond, relying upon the recital, supposed buildings were being erected upon the lots, but as a matter of fact there were no buildings in process of construction upon same. The court held that the surety was not bound by the recital in the bond and therefore was not liable, because the recital "was induced by a mutual mistake of fact without any fault or negligence on the part of the" surety. It will be noted that the mistake of the parties in that case was with reference to an essential element of their contract, that is, its subject matter, towit, buildings they supposed to be in process of erection on the lots. It is well settled that, except in cases where the uncertainty of the existence of the thing is the essence of the agreement, a mutual mistake of the parties as to the existence of the subject matter of their contract will invalidate it. 20 Am. & Eng. Ency. of Law, 813; 1 Page on Contracts, secs. 60, 71. Here the mistake was not with reference to an essential element of the contract of guaranty, but was with reference to a matter collateral to it. The note appellant undertook to guaranty that Crites would pay was in existence and was a valid and subsisting charge against the lot, as the parties supposed it to be. The matter about which they were mistaken was as to the payment of the other $500 note—a thing collateral to the one they contracted about. It is

well settled that, in such a case, the mistake does not invalidate the contract. "Whatever may be thought," says Mr. Page, "of the propriety from a moral standpoint of holding a person to a contract into which he entered under a mistake as to a collateral material fact, the law is confronted with the necessity of adopting a rule which will make it possible to enforce contracts at all. Accordingly the rule adopted by the great weight of authority is that mere mistake in the inducement is not operative and that a contract induced by reason thereof is perfectly enforceable and valid. A mistake of this sort is an error for which the law furnishes no relief." 1 Page on Contracts, sec. 155.

The motion is overruled.

*Affirmed.*