## PORT CITY LUMBER CO. v. WADE.
### (No. 9230.)

Court of Civil Appeals of Texas. Galveston. March 21, 1929.

W. M. Cleaves, of Houston, for appellant.

B. F. Louis and Murray G. Smyth, both of Houston, for appellee.

GRAVES, J. The appellee, plaintiff, was awarded a $1,360 judgment against the appellant, defendant, as for an agreed commission of 2 per cent. for procuring a purchaser for it for $68,000 of first-lien notes on 10 houses and lots on Norfolk street in Castle Court addition to the city of Houston, upon these answers of a jury to the special issues they thus severally follow:

"No. 1. Did or did not the defendant, Port City Lumber Company, acting through A. I. Cammack, employ Mrs. Minnie P. Wade, the plaintiff, to procure a purchaser for first lien notes in the aggregate of about Seventy Thousand ($70,000.00) Dollars secured by property in Castle Court Addition to the City of Houston, and on Norfolk Street therein, consisting of certain houses and lots? It did.

"No. 2. Was or was not T. J. Holbrook, acting for the Security Trust Company of Galveston, Texas, ready, able and willing to purchase the first lien notes which the defendant, Port City Lumber Company, through its manager, A. I. Cammack, had so employed plaintiff to sell? He was.

"No. 3. Was or was not T. J. Holbrook, acting for the Security Trust Company of Galveston, Texas, accepted by and satisfactory to, Port City Lumber Company, acting through its manager, A. I. Cammack, as a purchaser for the first lien notes which the said defendant employed plaintiff to sell? He was.

"No. 4. What amount of such first lien notes did the Port City Lumber Company, acting through its manager, A. I. Cammack, agree to sell to T. J. Holbrook, acting for the Security Trust Company of Galveston? $68,000.00.

"No. 5. What amount of such first lien notes did T. J. Holbrook, acting for the Security Trust Company, agree to purchase

from the defendant, Port City Lumber Company? $68,000.00.

"No. 6. State what commission, if any, was agreed upon between the plaintiff and the defendant, Port City Lumber Company, acting through A. I. Cammack, for finding a purchaser by plaintiff for the first lien notes which the defendant, Port City Lumber Company, employed plaintiff to sell, if you have found plaintiff was so employed? 2%.

"No. 7. Were there any deductions agreed to be made from such commission as you have found in answer to the preceding issue; if so, state what would be the usual and reasonable amount of such deductions? None.

"No. 8. Under the employment agreement, was plaintiff, without further approval of such defendant, authorized to procure a purchaser for less than all of said notes; on fourteen lots? She was.

"No. 9. Did defendant ever approve the procuring by plaintiff of a purchaser of less than all of said notes, on fourteen lots? It did."

This verdict and judgment, looked at as an entirety, matured the appellee's particular cause of action substantially as in purport declared upon in her pleadings and supported by her proof; the appellant defended in the trial court upon pleadings—after general demurrer, not shown to have been acted upon, and general denial—in effect declaring: (1) That the specific agreement between the parties was that the notes it desired to have sold were those of third-person lot owners, which could only be sold with the latters' consent and co-operation, appellants' only interest and objective being the liquidation of its debts against such persons, resulting from having furnished them the means of improving their properties, through the negotiation by these respective owners of new loans thereon, out of which it was to be paid; that in dealing with appellee, it honestly believed these owners were in position to and would deliver first-lien mortgage papers against their properties to be so negotiated, but, before the appellee herein secured a purchaser pursuant to this agreement, superior deed of trust liens held by others were foreclosed thereon and the properties of these lot owners sold out thereunder, which legally incapacitated them from carrying out the contemplated arrangement; wherefore, there had been such a mutual mistake between the parties here as to the actual existence of an indispensable element of their attempted contract as rendered it nugatory. (2) That the agreement further was, in consonance with a general custom then prevailing in that community relative to such transactions, which custom was well known to the appellee, that she would neither be entitled to any commission until she had procured a purchaser for first-lien notes aggregating $70,000 in amount on all 14 of the lots they covered, on terms acceptable to the owners of the lots, nor unless and until the negotiation of such notes had been completed and the proceeds therefrom made actually available.

The same defensive theories run through the assignments in this court, there being detailed complaints to the effect: (1) That the appellee, having declared upon an alleged contract of employment to sell first-lien notes for a stipulated commission, failed to prove either its existence, identity, nature, and essential terms, or any conformity thereof to the prevailing general custom in that community affecting such business; (2) that the court erred in refusing to submit proffered inquiries and instructions touching these features, including appellant's motion for an instructed verdict, as well as in admitting and excluding certain testimony.

None of the assignments, we think, point out reversible error, since the issues submitted by the court fairly present what seem to us to be the material issues raised by the pleadings and evidence, and there is no lack of sufficiently supporting proof for the jury's verdict thereon; indeed, no attack is made upon any of the findings as being without such support, the first fourteen of the presentments made assailing the court's refusal of requested special issues and charges embodying the details of appellant's answering theories above outlined, three of the remaining five relating to the receipt or rejection of testimony, one to the overruling of its motion for peremptory instruction, and the last to the claim that special issue No. 1 should not have been submitted because too broad and general.

■ The verdict, on sufficient evidence, concludes adversely to it appellant's contentions on the facts as to the substance and nature of the contract touching a commission between its manager with plenary authority, Mr. Cammack, and the appellee: (1) That the notes forming the subject-matter of it were those of third-person landowners that were, with their co-operation, to be converted into new loans; (2) that appellee was to get her commission only when all the notes on 14 lots, aggregating $70,000 in amount, had been sold and the proceeds were in hand. So that, there was neither the mutual mistake underlying nor the contingency inhering in the contract actually made, as it averred; on the contrary, it must in this court be assumed, under the findings and the evidence, that appellant's manager employed the appellee to find it a purchaser for about $70,000 worth of first-lien notes against 14 houses and lots on the designated street, which notes he represented to be then in existence, for an agreed commission of 2 per cent.; that, in pursuance of that contract, she procured in the person of T. J. Holbrook—alter ego in the matter of the Security Trust Company of Galveston—a purchaser ready, able, and willing to buy $68,000 worth of such paper against 10 of the houses on terms then and there accept-

able to and agreed upon between all three of the parties, after an inspection of the properties, and that the sale was never completed solely because of appellant's subsequent failure, refusal, or inability to carry out its undertaking; this situation, involving the plain breach on appellant's part of a definite and unilateral obligation, without fault upon that of the broker, entitled the appellee to the stipulated commission on the $68,000 of the notes so agreed to be purchased, that is, $1,360, irrespective of the actual breakdown of the transaction, of who were the makers of the notes, of what particular lots the lien securing them covered, or even of whether or not they were in existence at all. Baldwin v. Smith (Tex. Civ. App. 1908) 119 S. W. 111; Hassell v. Gamble (Tex. Civ. App. 1924) 263 S. W. 936; McDonald v. Cabiness (Tex. Civ. App. 1906) 98 S. W. 943, affirmed 100 Tex. 615, 102 S. W. 721; Hamburger v. Thomas (Tex. Civ. App. 1909) 118 S. W. 770, affirmed (1910) 103 Tex. 280, 126 S. W. 561; 9 C. J. 586, § 84, notes 92 and 93; 591, § 86, note 19; 623, 624, § 102; 627–629, § 104, notes 86, 87, 92, and 93; 596, § 87, note 31; 599, § 88, note 47 (d); 600, § 88, note 51 (a); 625, § 102, note 68 (b); 609, § 93, notes 96 and 97; Kolp v. Brazer (Tex. Civ. App. 1913) 161 S. W. 899, 901 (7); Berg v. San Antonio Street Railway Co. (1897) 17 Tex. Civ. App. 291, 42 S. W. 647, motion for rehearing overruled (1898) 17 Tex. Civ. App. 291, 43 S. W. 929; Pryor v. Jolly (1897) 91 Tex. 86, 40 S. W. 959; 13 Corpus Juris, 612, § 656; 373, §§ 255–258; Darnell v. Dolan, 63 Tex. Civ. App. 386 (1910) 132 S. W. 857; Brewer v. Sammies Oil Corp. (Tex. Civ. App. 1922) 241 S. W. 519.

We do not stop to inquire whether the nonperformance of the contract was due to inability, refusal, or unwillingness on appellant's part to go on with it, because, in the circumstances stated, that became immaterial; while it was undisputedly shown that the 10 houses and lots Holbrook agreed to purchase the first-lien notes on had shortly prior thereto been sold out against the owners under lien superior to any claims appellant had thereon—a fact unknown to Holbrook or the appellee—there was also testimony tending to indicate that appellant had, before this trial, acquired those foreclosure titles and so had come into position to deliver first-lien notes thereon.

Neither can we see any support for the contention so earnestly urged in the brief that the Holbrook agreement to purchase the notes was in any sense a conditional, dependent upon others, or contingent one, notwithstanding his letter of April 7, 1927, next day after his visit to the properties, because he repeatedly testified that all the details of the purchase had been fully agreed upon between him and appellant's manager while on the ground together, and that the subsequent letter was a matter of form only; that he had then definitely and finally agreed to buy $68,000 of the notes on 10 of the lots he looked at, and had been thereafter at all times up to this trial willing, able, and ready to carry that arrangement out.

We find no evidence of the existence of any such a general custom as appellant alleged with reference to commissions in transactions of this nature being only payable when the trade had been consummated and out of the realized proceeds, but if there had been enough to raise the question, the refusal of its requested charges and special issues on that subject constituted the denial of no right in appellant, for the reason that, having fallen down in the performance of its unconditional obligation through failure of its title or other inability, unmixed with fault upon appellee's part, it would have been liable anyway under the rules of law applicable to the facts developed. 2 Elliott on Contracts (1913) pp. 1003, 1023, 1019, §§ 1677, 1691, and 1688, respectively; Missouri Pac. R. Co. v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; Alliance Ins. Co. v. Gin Co. (Tex. Com. App.) 285 S. W. 257 (6); Berg v. Railway, 17 Tex. Civ. App. 291, 42 S. W. 647, and 43 S. W. 929; Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959.

The rulings affecting testimony challenged were the admission of an explanation by appellee's witness T. J. Holbrook, as to the above-mentioned letter he had written appellant April 7, 1927, the day following his inspection of the properties involved, and the exclusion of proffered testimony from appellant's manager, Mr. Cammack, to the effect that on April 5, 1927—the day before he (Holbrook) and the appellee had together visited and inspected these properties—they had all been sold out under prior lien notes and bought in by the Burwood Realty Company, thereby destroying the liens of the notes theretofore owned by appellant.

The testimony thus complained about reflected nothing not otherwise in evidence, hence neither the admission of that from the one nor the rejection of that from the other prejudicially affected appellant; moreover, had that not been so as to Mr. Cammack's, proof of these prior foreclosure sales could not, under the authorities cited, supra, have constituted any defense for appellant on that account against the appellee's suit, since the evidence undisputedly showed that neither she nor Holbrook ever knew anything about them, or the liens they matured, nor of other inability of appellant to perform, until long after all her service under the contract had been fully rendered; had it been shown that she then knew of this potential infirmity in appellant's title to the notes it was employing her to sell and contracted accordingly, a different situation would have been presented.

As further concerns Mr. Holbrook's, it may be repeated that he did, over and over again, without objection, make precisely the

same explanatory statement in slightly different language, it being in effect that the letter referred to, while it recited the details of what appellant was to do in closing up the loan, was a mere "matter of form," because he had fully agreed upon all those things with Mr. Cammack in person the day before; in these circumstances, even if it could be said that the explanation was improperly received, the error was harmless. Texas and Southwestern Digest, Key No. Appeal and Error, 1051 (1), 1052 (2).

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal, and require an affirmance of the trial court's judgment; it has been so ordered.

Affirmed.