ROBERT GIBSON v. EDWARD GRAY ET AL.

Delivered December 18, 1897.

1. **Real Estate Broker's Commissions Due Upon Sale Not Consummated, When.**

A broker employed to sell real estate has discharged his duty when he produces a purchaser able and willing to buy upon the terms and at the price fixed by the seller, regardless of whether the sale is ever actually consummated or not, provided that such failure is not due to some fault of the broker.

2. **Same—Trustee and Assignee for Creditors Personally Liable, When.**

Where a real estate broker was engaged by an assignee for the benefit of creditors to make sale of certain land belonging to the trust estate under a contract by which the assignee did not exempt himself from personal liability, and the broker procured a purchaser at a price which was acceptable to the assignee, but before the deed was executed by the assignee an injunction was issued at the instance of a creditor of the insolvent estate, on the ground of inadequacy of price, restraining the completion of the sale, and the purchaser thereupon withdrew his offer, the broker was entitled to recover his commissions, and the assignee was personally liable therefor.

3. **Same—Liability of Trust Estate.**

The broker was also entitled to a decree that his judgment be paid out of the funds of the insolvent estate; and the original assignee, having been discharged as such, was entitled to judgment over against the estate in the hands of his successor.

4. **Assignee for Creditors Not an Officer of Court.**

An assignee in a deed made for the general benefit of creditors in accordance with the assignment statutes, is a trustee, not an agent, and is not, like a receiver, an officer of court, nor entitled as such to exemption from personal liability upon his contracts concerning the trust estate.

APPEAL from Dallas. Tried below before Hon. W. P. ELLISON, Special Judge.

*Richard Morgan*, for appellant.—1. A broker employed to sell real estate has discharged his duty when he produces a purchaser able and willing to buy upon the terms and at the price fixed by the seller, and is thereupon entitled to his commissions regardless of whether the sale is

consummate is not due to some fault of the broker. Conkling v. Kraever actually consummated or not; provided, of course, that the failure to kauer, 70 Texas, 735; Mech. on Agency, secs. 966, 967, 612, 613; Martin v. Ede, 37 Pac. Rep., 199; Gauthier v. West, 47 N. W. Rep.; 656; Vinton v. Baldwin, 45 Am. Rep., 447.

2. The rule announced in our first proposition is not altered by the fact that appellant's employer, Gray, was a trustee, because (a) a trustee may employ a broker and pay him out of the trust estate; (b) when the trustee acts strictly within the line of his duty and is not guilty of any misconduct, if loss results from his acts such loss must be borne by the trust estate; (c) and whether the trustee is entitled to be reimbursed for expenses incurred in employing attorneys or other agents in the management of the trust, depends not on the results accruing to the estate, but on whether or not, under the circumstances existing at the time of such employment, it was reasonable and proper to incur the expense. Armstrong v. O'Brien, 83 Texas, 635; Perry on Trusts, secs. 404, 409, 912, 913; Kennedy v. Briere, 45 Texas, 305; Caldwell v. Young, 21 Texas, 800; Woods v. Creditors, 4 Vt., 256.

3. While the trustee is entitled to be reimbursed for expenses incurred by him in the proper management of the trust estate, nevertheless he is personally liable to all parties with whom he contracts, unless he expressly stipulates to the contrary, and the liability of the estate to his employes is only secondary and depends on whether the trustee is entitled to be reimbursed by the estate. Connally v. Lyons, 82 Texas, 670; Caldwell v. Young, 21 Texas, 800.

*George H. Plowman*, for appellees.—1. Where negotiations are pending for a sale, and before the sale is consummated same is prevented by loss of the property or any other casus without the fault of either party, it puts an end to the sale and neither can recover. Whart. on Cont., secs. 316, 317-322.

2. Where injunction is served on a party to a contract prohibiting him from performing his part of the contract, and the performance of the contract becomes illegal and in violation of law, it is a sufficient reason for not carrying out the contract, and no recovery can be had by a broker for commissions for a sale not made and thus prohibited. Rev. Stats., arts. 2887, 2888, 2895, 2897; 1 Whart. on Cont., secs. 297, 305, 314, 322; Mech. on Agency, secs. 20, 974; Laws. on Cont., sec. 424; 3 Am. and Eng. Encyc. of Law, 899, 901; People v. Ins. Co., 91 N. Y.; Hepburn v. Montgomery, 97 N. Y., 618; Peacock v. State, 44 Texas, 13; Ex Parte Kellogg, 64 Cal., 343; Wade v. Nason, 74 Am. Dec., 597.

3. A broker's commission depends upon success. A sale must have been consummated and the minds of the vendor and purchaser have met before a broker can be entitled to his commissions. McGavock v. Woodlief, 61 U. S., 884; Mech. on Agency, sec. 965; Love v. Miller, 21 Am. Rep., 196; Tombs v. Alexander, 3 Am. Rep., 350; Sibbald v. Iron-works, 38 Am. Rep., 441.

FINLEY, Chief Justice.—This was a suit in the District Court of Dallas County, Texas, Forty-fourth Judicial District, wherein the appellant, Robert Gibson, was plaintiff, and the appellees, Edward Gray and C. A. Robertson, were defendants. Plaintiff sued to recover $1325, alleged to be due him as commissions for services rendered by him to said Gray in negotiating a sale of certain real estate, to wit, block 57 in the city of Dallas, Texas; the said Gray being at the time said services were rendered the assignee in a deed of general assignment made by the Tompkins Machinery and Implement Co., an insolvent corporation, and which said block 57 had been conveyed to said Gray, as assignee, by said deed of general assignment.

During the pendency of this suit said Gray resigned as such assignee, and the said C. A. Robertson was appointed as his successor, and by amendment plaintiff thereupon made said Robertson a codefendant with said Gray, and prayed judgment against both defendants, and that the decree might be so framed as to subject the assets in the hands of said Robertson to the satisfaction of the judgment.

The pleadings consisted of plaintiff's amended original petition and his trial amendment, defendant Gray's general demurrer, and a motion to dismiss, which the court treated as a general demurrer, and defendant Robertson's amended original answer and supplemental answer, which included demurrers, general and special, a denial, and several special pleas. The court sustained the defendant Gray's general demurrer, overruled the demurrers of the defendant Robertson, and the issues of fact having been submitted to a jury, the court directed a verdict to be rendred in favor of said Robertson, which was accordingly done, and judgment was thereupon rendered in favor of both defendants, that plaintiff take nothing. From this judgment plaintiff has appealed.

There seems to be no controversy as to the facts shown upon the trial; they are in substance as follows:

On March 21, 1891, the Tompkins Machinery and Implement Company, a Texas corporation, made a general assignment for the benefit of its creditors to the defendant Edward Gray, assignee, conveying to said assignee, among other things, the aforesaid block 57 in the city of Dallas. Said block 57 was at that time incumbered by two mortgages or deeds of trust—one securing a debt of $25,000 to the Security Mortgage and Trust Company, and the other, which was a second lien, securing a debt of $25,000 to the City National Bank of Dallas. The bank held as security for its debt, in addition to its said mortgage, a large amount of notes pledged with it as collateral by said Tompkins Machinery and Implement Company.

The bank's debt secured by the aforesaid second lien on the land as well as by said collateral notes, became due in March, 1892, and not being paid, the trustee in said deed of trust, at its request, sold said block 57 under said second deed of trust, on the first Tuesday in August, 1892, and the bank bid in the property at a nominal sum, to wit, $100. There was some irregularity in this sale which would probably have made it

necessary to readvertise and sell again in order for the bank to acquire a valid title under its foreclosure; but instead of doing so, the bank made an agreement with the said assignee whereby it agreed that he might sell the property for $45,000, and upon being paid a portion of its debt, it would release its claim upon the property.

The defendant Edward Gray, as such assignee, began soon after the making of the assignment to try to find a purchaser for this property, and in so doing sought the assistance of several real estate agents in the city of Dallas, but was unable to find a purchaser. In the spring or early summer of the year 1892, he employed the plaintiff to assist him in the matter, agreeing with the plaintiff that if he would sell the property at a price satisfactory to said Gray, he, Gray, would pay plaintiff the same commissions usually paid to real estate agents in Dallas for similar services. The commissions usually paid for such services are 5 per cent on the first $8000 of the price at which the sale is negotiated, and 2 1-2 per cent on all over $8000. The plaintiff thereupon endeavored to find a purchaser for said property, and finally, through his endeavors, a sale of the property was agreed on between the said Edward Gray and Mr. C. P. Huntington, at and for the price of $45,000, cash, Mr. Gray agreeing to convey the property to him for that amount by perfect title, clear of all liens. Gray was to furnish an abstract of title, and the purchaser was to have a reasonable time within which to examine said abstract. The exact date of this contract of sale is not in evidence, but it was some time between the 1st and 9th of September, 1892. Mr. Huntington had in writing authorized plaintiff Gibson to draw on him for $45,000 as soon as the title was found to be good. The purchaser was ready, able, and willing to buy at the price and on the terms agreed on with Gray. The abstract of title was delivered by Gray to Gibson on September 9, 1892, and by the latter sent, by direction of Huntington, to Mr. Dillingham, at Houston, Texas, to be examined by attorneys there. The liens on the property exceeded the sum of $45,000 by some $4000 or $5000, but before agreeing to sell at that price, Gray had made an agreement with the City National Bank, which owned the debt secured by the aforesaid second mortgage, to the effect that he might sell at that price, and that upon being paid what was left of the $45,000, after paying therefrom all other liens and Gibson's commissions, they would release their mortgage so that he could give the purchaser a clear title to the property, although the price at which he had agreed to sell as aforesaid was less than the amount of the liens. By making said sale the assignee expected to reduce the bank's debt about one-half, and by so doing be able to save for the creditors of the assignment several thousand dollars of the notes which the bank held as collateral in addition to its mortgage.

On or about September 26, 1892, Gray was notified that the examination of the title was completed and was found to be satisfactory, provided the aforesaid liens were released, and was also notified that Huntington was ready to pay the money and receive the deed. Gray, however, could

not proceed in the matter in consequence of having been in the meantime served with a restraining order, as will be hereafter more fully detailed.

On the same day, or the day after the said Edward Gray had contracted to sell said property to Huntington, as above stated, he informed Mr. Tompkins, the president of the Tompkins Machinery and Implement Company, of what he had done, and Mr. Tompkins expressed himself as being dissatisfied, and thereupon the said Gray suggested to him that if there was any reason why the sale should not be made, it could be stopped by an injunction, and further said he would be glad to have the court pass upon the matter. Accordingly, on September 16, 1892, a suit was begun in the name of the Skinner Engine Company and the Union Iron Works, two of the creditors of said Tompkins Machinery and Implement Company, as plaintiffs, against the said Edward Gray, the said City National Bank, and the Security Mortgage and Trust Company, for the purpose of enjoining the sale which said Gray had agreed to make as aforesaid. This suit was finally disposed of on September 19, 1892, by a judgment in favor of the defendants.

Afterwards, on September 23, 1892, another suit was begun in the name of the Hall Self-Feeding Cotton Gin Company, as plaintiff, against said Edward Gray, said City National Bank, and the Security Mortgage and Trust Company, in which a temporary restraining order was made on September 23, 1892, restraining the defendants from selling said property until the further order of the court, and setting the —— day of October, 1892, as the date for a hearing as to whether or not the interlocutory injunction should be granted. It was this restraining order which prevented Gray from proceeding when notified by Huntington that he was ready to pay the money and receive the deed. Appellant offered to prove that the allegation in the petition upon which said restraining order was issued was that the plaintiff therein, the said Hall Self-Feeding Cotton Gin Company, was willing to give $50,000 for the property. The court, however, refused to permit any proof as to the allegations in said petition, holding that while it was relevant and material to show the fact that an injunction was issued in said suit, it was wholly immaterial and irrelevant to show what the allegations were upon which said writ was granted. To which ruling appellant excepted and took his bill of exceptions. The following orders were made in said suit of the Hall Self-Feeding Cotton Gin Company v. Edward Gray, assignee, et al., to wit: On October 6, 1892, plaintiffs were ordered to either pay the assignee $50,000 by 9 a. m. October 8, 1892, or by said time give bond in the sum of $10,000 that they would pay the assignee $50,000 for the property when the title is pronounced perfect. On October 8, 1892, the above order is extended to 5 p. m. October 10, 1892. On October 13, 1892, plaintiff was given until noon October 24, 1892, to procure opinion on the title. On October 24, 1892, time was extended until noon October 29, 1892. On November 12, 1892, C. P. Huntington was granted leave to intervene. He had, however, filed his petition in intervention on October 5, 1892.

On December 13, 1892, Huntington brought a separate suit in the Dis-

trict Court of Dallas County against said Edward Gray, as assignee, to compel a specific performance of the aforesaid contract of sale made between them, and his intervention in the aforesaid injunction suit was for the same purpose.

In the spring or summer of 1893, Huntington notified the defendant Robertson, who, as will be hereafter stated, had then succeeded Gray as assignee, that his offer of $45,000 for the property was now withdrawn, and on August 8, 1893, he dismissed his said suit against Edward Gray and also dismissed his aforesaid intervention in the injunction suit.

Said injunction suit was finally disposed of on October 20, 1893, by a judgment in which it is recited that the assignee could not give the plaintiff therein a good title for $50,000, and therefore the injunction previously granted is dissolved.

Not long afterward the property was sold under the first lien thereon, to wit, the $25,000 deed of trust to the Security Mortgage and Trust Company, and was bid in by it for the amount of its debt.

The appellant understood that the said Edward Gray, in employing him to find a purchaser, and in contracting to sell the property as above stated, was acting as assignee and in behalf of the trust estate, but there was no express agreement between them as to whether Gray should be personally liable or not.

The defendant Robertson, who was assignee at the time the injunction suit was disposed of, in October, 1893, as aforesaid, testified that during the pendency of that suit he made no effort to sell the property; that afterward he did make diligent effort to effect a sale, but was unable to do so or to find a purchaser at any price.

This present suit was begun November 17, 1892, and during its pendency and during the pendency of the injunction suit, the defendant Gray, on December 20, 1892, filed in the said District Court of the Forty-fourth Judicial District his report of his acts as assignee, accompanied by his account as such assignee, and tendering his resignation as such assignee. In said report he says, among other things, the following in respect to said block 57: "That from the date of the assignment until July, 1892, this assignee endeavored, through every channel known to him, to sell said property, but failed to obtain an offer. That in July, 1892, the City National Bank advertised said property for sale under its trust deed, and afterward sold same and became the purchaser thereof, but said sale was defectively advertised and therefore inoperative; that after the said sale this assignee, through Mr. Robert Gibson, agreed to sell said property to Mr. C. P. Huntington for the sum of $45,000 cash, believing it for the manifest interest of the estate.

"That upon learning of said sale, the Skinner Engine Company and the Union Iron-works, creditors under said assignment, objected to same on the ground of inadequacy of price, and brought suit in this court to enjoin same, which upon a hearing was decided by your honor adversely to complainants and their bill dismissed. That shortly thereafter the Hall Self-Feeding Cotton Gin Company brought a similar suit in the

Fourteenth Judicial District court, offering $50,000 for said property. This latter suit is still pending, the court granting the writ upon condition that complainants make good their offer of $50,000, which up to this date they have failed to do.

"This assignee would further show to your honor that he agreed as assignee to pay Robert Gibson the usual commission to sell said block 57 for the sum of $45,000, which commission, he is informed, would be $1325, for which said Gibson has instituted suit against him as assignee, which suit is now still pending."

On December 22, 1892, an order was made by the judge of the Forty-fourth Judicial District upon the matters set forth in said report, by which order the resignation of said Gray as assignee was accepted, and he was discharged; the defendant C. A. Robertson was appointed to succeed the said Gray as assignee, and the said Robertson was ordered to make himself a party to all litigation in favor of or against the said Edward Gray then pending, and he was ordered to fully protect the said Gray against all liability on account of such litigation incurred by him as such assignee under and in accordance with law; and further stipulated that nothing therein is to prejudice or in anywise affect the contract of sale claimed by C. P. Huntington, nor the claim of Robert Gibson for commissions upon said sale, but those matters being then in litigation, are to be left open and unaffected by said order.

The defendant C. A. Robertson qualified as assignee under the aforesaid appointment within a day or two thereafter and took charge of the assets of the estate, and has ever since been and is now acting as such assignee.

*Opinion.*—The sixth, seventh, eighth, ninth, and tenth assignments of error all relate to the same question, and challenge the correctness of the charge of the court, and the verdict rendered in accordance therewith. The court charged the jury as follows:

"Gentlemen of the jury, you are instructed as follows: Plaintiff sues defendant for services alleged to be due to him under a contract alleged to have been entered into by and between him and one Edward Gray, as assignee of the Tompkins Implement and Machine Company, whereby plaintiff, in consideration that said Edward Gray, as and in his duty as such assignee, promised to pay him certain commissions therefor, procured one C. P. Huntington to agree to pay the sum of $45,000 for a conveyance by such assignee to said Huntington of block 57 in the city of Dallas, the same being a part of the estate assigned to Edward Gray.

"You are told that by the uncontroverted testimony in this case, it appears that, after the making of the contract for services, if any was made, and after said Huntington, at the procurement of plaintiff, agreed to purchase said lot at and for said sum of $45,000, on September 23, 1892, and before the conveyance to said Huntington had been made, or any part of the purchase price aforesaid had been paid, an injunction issued out of the honorable District Court of the Fourteenth Judicial Dis-

trict of Texas, restraining said Edward Gray, assignee, from selling said lot at a less price than $50,000.

"That said Edward Gray thereafter resigned as assignee of said estate, and defendant C. A. Robertson was appointed in his stead, and as such successor defends this suit. That such injunction remained in force until November 20, 1893.

"That some time in the spring of 1893 said Huntington, while such injunction was in force, notified plaintiff that he withdrew his offer of $45,000 for said lot. Under the foregoing facts you are instructed to find a verdict for the defendant C. A. Robertson, assignee."

Under the several assignments of error appellant urges these propositions:

(1) A broker employed to sell real estate has discharged his duty when he produces a purchaser able and willing to buy upon the terms and at the price fixed by the seller, and is thereupon entitled to his commissions, regardless of whether the sale is ever actually consummated or not; provided, of course, that the failure to consummate it is not due to some fault of the broker.

The correctness of this proposition is well established by authority. Conkling v. Krakauer, 70 Texas, 735; Mech. on Agency, secs. 966, 967, 612, 613; Gauthier v. West, 47 N. W. Rep., 656; Vinton v. Baldwin, 45 Am. Rep., 447.

(2) The principle or rule announced in the first proposition is not affected or in any manner changed by reason of the fact that appellant's employer was an assignee, and was understood to be acting in this trust capacity.

It is equally clear that a trustee contracting for the benefit of a trust, special terms of the trust, may employ such assistance as may be reasonably necessary to a proper administration of the trust, without violation of the principle that a delegated power can not be again delegated. 1 Perry on Trusts, secs. 404-409; Armstrong v. O'Brien, 83 Texas, 635.

It is equally clear that a trustee contracting for the benefit of a trust, becomes personally bound, unless he stipulates to the contrary. In Taylor v. Mayo, 110 U. S., 321, it is said: "A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate can not promise; the contract is, therefore, the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such. The mere use by the promisor of the name of trustee or any other name of office or employment will not discharge him. Of course, when a trustee acts in good faith for the benefit of the

trust, he is entitled to indemnify himself for his engagements out of the estate in his hands, and for this purpose a credit for his expenditures will be allowed in his accounts by the court having jurisdiction thereof.

"If a trustee,. contracting for the benefit of a trust, wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate.  There are, no doubt, cases where persons occupy the position of quasi trustees, under the appointment of a court, such as receivers charged with the performance of active duties, in which it would involve much hardship to make them personally liable.  But in such cases, as the parties have the right to prove their claims against the common fund, and have them allowed by the court, the officer may have the protection of the court by which he is appointed, restraining parties from bringing suits against him, except where leave is given for the purpose of fixing the amount due."  See also Connally v. Lyons, 82 Texas, 664; Barton v. Barbour, 104 U. S., 126; Fitzhugh v. Fitzhugh, 62 Am. Dec., 654.

It is insisted by appellee Gray that the case of McNulta v. Lochridge, 141 U. S., 327, is authority for the proposition that he is not personally bound by the contract of employment of Gibson, and that his successor is therefore the only proper party defendant to this suit.  The case cited holds that a receiver, appointed by a court to succeed another receiver, may be sued upon a cause of action arising against his predecessor, without first obtaining permission of the court in which the receivership is pending to file such suit.  In discussing that question the court says: "Actions against the receiver are, in law, actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences, and liabilities are official and not personal, and judgments against him as receiver are payable only from the funds in his hands."

A receiver is not a mere trustee; he is an officer of court and acts directly under and by virtue of the orders of the court appointing him. His custody of the property is that of the court, and his acts, so far as authorized, are the acts of the court, and of course he incurs no personal liability while acting within the scope of his authority.

An assignee, appointed in a deed of assignment made in conformity with our general assignment law (Revised Statutes, title 8, articles 71-86), is not an officer of court, but merely a trustee selected and constituted by the assignor.  The manner in which he shall manage and dispose of the estate assigned for the benefit of creditors is neither fixed by orders of court nor prescribed by statute.  He is a trustee appointed by the assignor for the purpose of selling the estate and apportioning the proceeds among all the creditors of the assignor.  He acts with a discretion in the premises, and the responsibility of his acts rests upon his own shoulders.  We are unable to perceive any principle which would exempt such an assignee from personal liability for an obligation incurred by him for the benefit of the estate.  The same principle which would make an independent

executor personally liable applies with the same force to such an assignee. The case cited wholly fails to sustain the contention.

The authorities establish the proposition that where the trustee acts within the line of his authority, in good faith, and with such care as an ordinarily prudent person would have exercised under similar circumstances in the conduct of his own business, the liability incurred for the benefit of the estate should be met out of the funds of the estate. Caldwell v. Young, 21 Texas, 801; Kennedy v. Briers, 45 Texas, 305; 2 Perry on Trusts, secs. 912, 913; Taylor v. Mayo, supra.

It is insisted by counsel for appellee Robertson that appellant is not entitled to recover his commissions as agent for the sale of the realty, and have them paid out of the funds of the estate, for the reason that the court enjoined the assignee Gray from the consummation of the sale, and thereby made performance on his part unlawful, and, in contemplation of law, impossible. In support of this proposition we are cited to a line of authorities holding that where performance of a contract is prevented by judicial proceedings a recovery can not be had for failure to perform, and that such judicial proceedings, when shown, are a good defense to a suit upon an executory contract. If this were a suit against the assignee, Gray, by the person to whom the property had been agreed to be sold, to recover damages on account of the breach of the contract of sale, the proposition urged would have application. The case of People v. Insurance Company, 91 New York, 174, is an authority relied upon. That case holds that where a corporation, insurance company, was by judicial proceedings enjoined from prosecuting its business, an agent employed for a specified length of time could not recover for failure to carry out the contract after the injunction was granted restraining the company from carrying on its business. His salary was paid up to the time of the injunction, and his suit was based upon a claim for salary for future services contemplated by the contract. It was held that the action of the court in preventing the company from carrying on its business operated to prevent the company and the agent from carrying out the contract, and in effect annulled it.

It will be observed that this case does not refuse a recovery for services rendered prior to the injunction, but only for services which were contemplated in the future, and which could not in the very nature of the case ever be rendered. We fail to find in this case the principle contended for by counsel.

Hepburn, Receiver, v. Montgomery, 97 New York, 617, is also cited to the same point. In this case it seems to be held that a general agent could not recover commissions contracted for on contemplated renewals of policies, when the right of the company to receive premiums upon such renewals was taken away and destroyed by the action of the State in dissolving the corporation.

This authority falls far short of establishing the doctrine urged by counsel. Upon the principles hereinbefore announced, the assignee Gray had the right to employ the assistance of appellant, if reasonably neces-

sary for a proper administration of his trust, and would have been justified in paying for such services out of the funds of the estate. This proposition finds a close analogy in the rules governing the actions of a guardian. Our statute makes it the duty of the guardian to manage the estate of the ward in such manner as a prudent man would manage his own property (Revised Statutes, article 2625), and it provides for payment of all reasonable and proper expenses incurred by the guardian for the benefit of the estate, out of the estate of the ward (Revised Statutes, article 2782). Our general assignment statute, as before stated, leaves full discretion to the assignee as to how he shall manage and dispose of the estate, and provides that he "shall be entitled to reasonable compensation for his services, and his necessary costs and expenses, including also his attorney's fees, all to be allowed, in case of difference between the parties, by the county judge or judge of the district court." Rev. Stats., art. 85.

In the case of Caldwell v. Young, 21 Texas, 802, the rule for determining whether the liability incurred by the guardian for attorney's fees shall be paid out of the ward's estate is thus stated: "The allowance to the guardian is not to be determined by the test of whether the suit resulted favorably or unfavorably. That would place the guardian in the attitude of an insurer to the extent of such expense, which would often prevent suits from being brought which any prudent man in the management of his own business would think it proper and necessary to bring. The true test is, would a prudent man, under all the circumstances, as they existed at the time, judge it to be proper and necessary to bring and prosecute the suit to protect the interest of the minors, and would he judge it necessary and proper to make the employment of counsel to prosecute the suit. If so, then such employment would be a necessary and reasonable expense, which should be allowed to the guardian."

In the case just cited, while the principle is recognized that the attorney has no direct remedy by common law or statute against the property of the ward, it is held, as the ward's estate should bear all necessary and proper expense incurred by the guardian for the benefit of the estate, that upon proper allegations under our system, the estate of the ward may be directly proceeded against by the attorney for compensation for services rendered the guardian. Upon this phase of the case it is said: "Neither by the common law nor by statute has the attorney, for any such employment, any direct remedy against the property of the ward, in a suit of this kind. But as it is equitable that the ward's property should be liable for an expense which the guardian, in the proper discharge of his duty, has a right to incur, there is no inconsistency in our courts, possessing a blended jurisdiction both of law and equity, allowing a direct recourse upon the ward's property on the part of the attorney, upon his averring and proving such facts as would compel the county court to allow his claim to the guardian, if paid and presented for allowance, as an expense incurred by the guardian."

The deductions which necessarily follow the principles announced are these:

1. Appellant having been employed by the assignee, Gray, to sell the property upon a commission, and having performed the service for which he was employed, prior to the issuance of the injunction, he is entitled to pay for his said services.

2. The assignee Gray did not exempt himself from personal liability by the terms of the contract of employment, and became thereby personally liable to appellant. It was error, therefore, to dismiss the case as to him.

3. Appellant is also entitled to a decree that his judgment be paid out of the funds in the hands of assignee Robertson, if it be found, under the principles above announced, that assignee Gray was justified in employing appellant to assist in the sale of the property.

4. Under proper pleadings, and under conditions just stated, assignee Gray would be entitled to a decree in his favor against the estate in the hands of assignee Robertson. All parties are before the court, and their several rights and interests should be protected by the decree.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Bookhout, Associate Justice, did not sit in this case.