### GILLIAM v. JONES.　　(No. 1711.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 17, 1920.)

1. Brokers �köm54, 61(1), 63(1)—Broker entitled to commission on procuring ready and willing customer; commission for procuring customer not to be defeated by refusal to convey or failure of title.

Where an owner of land employs a broker to procure a purchaser for the land on stated terms, the broker is entitled to the agreed commission if he procures a customer ready, able, and willing to purchase on the authorized terms, and his right cannot be defeated by the refusal of the owner to convey or by the failure of the owner's title.

2. Brokers ⊫köm88(14)—Finding that purchaser refused to purchase held not to defeat right to commission.

Where the jury found that the purchaser procured by broker was ready, able, and willing to purchase on the terms stated to the broker, a subsequent finding that he refused to purchase on terms agreed on with the owner evidently referred to additional terms agreed on between the parties, after the vendor's failure to give possession as agreed because he had rented part of the land, and such finding does not prevent recovery by the broker of his commission.

Appeal from Hardeman County Court; R. V. Crowder, Judge.

Action by W. F. Jones against J. O. Gilliam. Judgment for the plaintiff, and defendant appeals. Affirmed.

L. W. Allred, of Chillicothe, for appellant.
Marshall & Perkins, of Quanah, for appellee.

HUFF, C. J. J. O. Gilliam employed W. F. Jones as a broker to procure a purchaser for 181 acres of land, listing the land with Jones, for the price of $50 per acre, and to pay for such services a commission of 5 per cent. on that price. W. F. Jones found a purchaser in the person of E. O. Jones, who agreed to purchase it at $50 per acre, and upon the terms at which the land was listed with the broker. The evidence is sufficient to show, and the jury found, that E. O. Jones was ready, willing, and able to purchase the land at that price, and at that time W. F. Jones brought E. O. Jones and Gilliam together. Gilliam himself admits that he authorized the appellee to procure a purchaser at the price of $50 per acre. The evidence shows also that Gilliam told the agent that he would give immediate possession of the land to the purchaser, and nothing was said about there being a tenant on the land. It seems after Gilliam and the proposed purchaser were brought together that Gilliam told him that he had a tenant on the place, whom he had let have about 20 acres to plant in cotton on the halves, that he would let E. O. Jones have one-fourth of the cotton as rent, and that he (Gilliam) would keep one-fourth to pay him for the seed, tools, and teams furnished, and that Jones agreed to this. This was one afternoon, and the next morning Jones asked Gilliam if he could put out the tenant, and Gilliam suggested they phone the tenant. The tenant was brought to Jones, the proposed purchaser, and after some negotiations they agreed on the price that should be paid the tenant, $50, and we infer that Gilliam was to furnish the tenant the seed to plant the cotton, and the tenant said he would take $50 for the work that he had done as tenant on the land, and that Jones, the purchaser, should pay Gilliam for the

seed. Gilliam testifies that he told Jones he thought that was fair, and that he would give him a few minutes to determine whether he pay the tenant $50 and pay him for the seed or he would call off the trade, and that Jones did not accept within that time, and when Jones went to Gilliam to make the deed Gilliam refused to make the deed because he had not accepted his proposition to pay for the seed; Jones contending that the tenant and he agreed that the tenant would take $50 and pay Gilliam for the seed, and that he and the tenant went to the bank, and he gave a check to the tenant for the $50, but, for the reasons stated by Gilliam, the trade was not consummated. The jury found in this case that Gilliam agreed with the broker, Jones, that if plaintiff would procure a purchaser for the land at the price of $50 per acre, the appellant would pay Jones a commission of 5 per cent. on that amount. They also found that the broker, Jones, procured and found a purchaser who was ready, willing, and able to purchase the land at the price of $50 an acre, and in addition to the above issues they answered in the affirmative the issue requested by appellant, which is as follows:

"Did E. O. Jones refuse to purchase the land upon the terms and conditions as agreed upon between E. O. Jones, the purchaser, and J. O. Gilliam?"

The appellant assigns error on the action of the court in refusing to render judgment in favor of appellant on the answer of the jury so made.

[1] By the contract of agency the appellee's right to the commission was not necessarily dependent upon a conveyance by appellant to the proposed purchaser. Since it is the rule in this class of cases, which becomes part of the contract, the broker is entitled to his commission whenever he secures a customer, ready, able, and willing to purchase upon the authorized terms, which cannot be defeated by the refusal of his principal to convey, or failure of his principal's title. Conklin v. Krakauer, 70 Tex. 735, 11 S. W. 117; Gibson v. Gray, 17 Tex. Civ. App. 646, 43 S. W. 922; Smye v. Groesbeck, 73 S. W. 972; Goodwin v. Gunter, 185 S. W. 295; Slade v. Crum, 193 S. W. 723; Crum v. Slade, 214 S. W. 441.

[2] It will be perceived that Gilliam authorized the sale of the land with immediate possession. Possession could not be delivered because he had rented 20 acres. He could not comply with his contract, or, in other words, he refused to convey as agreed upon, and his title to that extent failed. The issue upon which appellant insists he was entitled to judgment clearly is in response to the testimony with reference to the payment for the cotton seed purchased for the tenant to plant the 20 acres. The purchaser was not only willing to pay the list price, but to pay in addition thereto $50 to the tenant for possession, but Gilliam says he required before he would convey to the purchaser that he (Jones) would pay him for the seed and demanded of him to accept this proposition, if he wanted the land; if he did not do so, it was "all off." Jones does not seem to have so understood the contract. He gave the tenant his check for $50, and the tenant, according to Jones, agreed to pay for the seed and when Jones in a very short time afterwards requested the deed, appellant refused to make it. However, the jury evidently found according to appellant's version; that is, that Jones refused to pay for the seed and the $50 to the tenant, and that appellant and the purchaser had agreed on those terms after they came together. This may have authorized the finding that Jones refused to purchase on the latter agreement, but certainly did not defeat the broker in his commission. The effect of the evidence and the findings of the jury is that appellant refused to convey upon the terms he had authorized the agent to procure a purchaser, and that his title had failed in so far as delivering possession. The new terms imposed by appellant after the purchaser had been obtained upon the listing contract were made to enable appellant to deliver possession as he had agreed to do. He should not defeat the agent on the new terms. The findings of the jury on the last issue or contract did not, therefore, affect the broker's contract and his right to recover for services performed thereunder. It was not the broker's fault that there was a tenant in possession of the land, but it was the fault of appellant in not informing the broker of such fact.

The judgment of the trial court will be affirmed.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes