### HASSELL et al. v. GAMBLE. (No. 9120.)

(Court of Civil Appeals of Texas. Dallas. May 31, 1924.)

**1. Sales ⇐⇒58—Sellers of baseball club properties held to have agreed to secure league membership for purchasers.**

Acceptance by owners of all stock of baseball athletic association of offer to purchase same, wherein purchasers stated, "We shall expect to receive the approval of the Texas League and the National Association to the transfer of this property before any payment on the purchase price is made," *held* to obligate the owners to secure for purchasers the rights and franchises arising from membership in the league mentioned.

**2. Brokers ⇐⇒86(3)—Evidence held to sustain judgment for commission in procuring sale of baseball club properties.**

Evidence establishing that plaintiff, with whom baseball club properties had been listed for sale, organized association which offered to purchase same, and establishing the acceptance by the owners of such offer *held* to sustain judgment for plaintiff's commission on such sale.

**3. Brokers ⇐⇒54 — Broker employed to find purchaser entitled to commission when purchaser ready, able, and willing to buy is found, though sale not consummated.**

A broker employed to find purchaser is entitled to his commission when a purchaser ready, able, and willing to take the property on the terms specified is found, though no sale is consummated.

**4. Sales ⇐⇒23(3)—Offer to buy baseball club properties and acceptance thereof held to constitute binding contract.**

Offer of certain individuals composing contemplated association to buy baseball club properties upon stated terms, and acceptance of that offer, *held* to constitute a binding contract between the parties.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by R. H. Gamble against Jess Hassell and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Short & Feild, John F. Murphy, and Cavin Muse, all of Dallas, for appellants.

Love & Rutledge, of Dallas, for appellee.

LOONEY, J. This suit was brought by R. H. Gamble against Jess Hassell and wife, Irma Hassell, Hamilton Patterson and wife, Mary Patterson, and U. F. Short, to recover compensation earned as broker in regard to the sale of certain properties owned by the Hassells and Pattersons.

Defendant Short was dismissed from the suit, and, on trial, judgment was rendered in favor of Gamble against the remaining defendants, from which they have appealed.

Appellants were the owners of all the stock of the Dallas Athletic Association, a corporation. The corporation owned the unexpired portion (10 years) of a 12 years' lease on property known as "Marine Field," or "Gardner Park," the playing field of the Texas League baseball teams at Dallas, also owned the improvements and equipment thereon, the uniforms, baseball supplies and appliances, and the players under contract or held by option.

The owners were anxious to sell these properties, and, through their agent, Judge U. F. Short, about November 1, 1921, employed appellee to find a purchaser at $160,-000, net to the owners, agreeing that appellee should offer the properties at $165,000, and, in case a purchaser was obtained at that price, he should receive $5,000 as his compensation.

Appellee was diligent in efforts to sell, and succeeded in interesting a group of men who formed an association (to be incorporated) of which appellee was a member, and submitted to Judge Short, agent for appellants, the following written proposition:

"Dallas, Texas, Jan. 10, 1922.

"Judge U. F. Short, City—Dear Judge: We offer the owners of the Dallas Athletic Association and associates, one hundred and sixty-five thousand dollars ($165,000.00) for all the property belonging to the Dallas Athletic Association, which embraces all the shares of stock in the said Dallas Athletic Association, and all property belonging to it, including the unexpired portion—ten years—of a twelve-year lease with a monthly rental of $300.00 on the property known as Marine Field or Gardner Park, the present playing field of the Dallas, Texas, League baseball team and all improvements and equipment on the above-mentioned baseball grounds; all uniforms and baseball

---

⇐⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

supplies and appliances; all players under contract or held by option or agreement.

"It is expressly understood that the present owners are to deduct from the cash payment any and all sums of money collected in advance for concessions or advertising to this date.

"The present owners of the Dallas Athletic Association are to close up and secure adjustments satisfactory to us of all outstanding litigation, judgments or sale contracts or any other contesting factors pertaining to the Dallas Athletic Association; it being expressly understood that the present owners are to deliver the above-enumerated properties to us clear of all indebtedness of every nature, and we shall expect to receive the approval of the Texas League and the National Association to the transfer of this property before any payment on the purchase price is made.

"We make the above offer with terms of payment as follows: Fifty thousand dollars ($50,-000.00) in cash and one note executed by the proper officers of the new company for one hundred and fifteen thousand ($115,000.00) dollars due and payable on or before as follows:

"Fifteen thousand dollars ($15,000.00) December 1, 1922; twenty-five thousand dollars ($25,000.00) December 1, 1923; twenty-five thousand dollars ($25,000.00) December 1, 1924; twenty-five thousand dollars ($25,000.00) December 1, 1925; and twenty-five thousand dollars ($25,000.00) December 1, 1926—said note to bear interest at the rate of 7 per cent. per annum, payable semiannually, and being secured by a mortgage on the assets of the new company. Failure to pay first note when due will mature balance. This note to bear 5 per cent. for attorney's fees if placed in the hands of an attorney for collection.

"Should you and your clients accept this proposition, it will be to the interest of each and every person concerned to make necessary transfer at the earliest date possible, not later in any event than February 1, 1922.

| "[Signed] G. P. Edgell, | $15,000.00 |
| --- | --- |
| "W. R. Patterson, | 6,000.00 |
| "Milburn Hobson, | 5,000.00 |
| "H. A. Olmsted, | 1,000.00 |
| "M. E. Martin, | 1,000.00 |
| "R. H. Gamble, | 2,500.00 |
| "C. C. Rockenback, | 1,000.00 |
| "T. M. Cullum, | 500.00 |
| "T. O. Daniels, | 5,000.00 |
| "W. F. Kingsbury, | 1,000.00 |
| "H. E. Butler, | 1,000.00 |
| "C. H. Connell, | 1,000.00 |
| "W. H. Francis, | 1,000.00 |
| "F. V. Faulkner, | 1,000.00 |
| "D. C. Stewart, | 1,000.00 |
| "R. J. Blackburn, | 1,000.00 |
| "Joe M. Williams, | 1,000.00 |
| "Richard Haughton, | 5,000.00 |
| "E. R. Brown, | 1,000.00" |

Judge Short, on behalf of his clients and principals, accepted the offer contained in the above document. It was understood that when the final papers carrying out the terms cf the written offer were prepared and executed, and the stock of the Dallas Athletic Association was properly transferred, that these, together with the cash payment from the purchasers to the owners, would be deposited in escrow with the American Exchange National Bank of Dallas, to be held until the owners cleared away all pending litigation in which these properties were in any way involved, and freed the same from all incumbrances, and secured the adjustment of any other contesting factor pertaining to the association, but, in the meantime, possession of the properties was to be delivered to the purchasers.

. It was understood by the parties that appellee and associates would procure a charter for a corporation to take over, own, and operate these properties, and to execute the note mentioned in the written offer copied above.

[1] The Dallas Athletic Association did not at the time have membership in the Texas League, and the owners of these properties could not sell or deliver to appellee, or his associates, membership in the league. However, the following provision of the accepted offer, to wit, " * * * and we (the purchasers) shall expect to receive the approval of the Texas League and the National Association to the transfer of this property before any payment on the purchase price is made," meant, according to our view, that the owners obligated themselves to secure for the purchasers these rights and franchises.

The proposed purchasers were able, ready, and willing to take the properties on the terms specified in the accepted offer, and the consummation of the sale to them was defeated by no fault of theirs.

Judge Short, on behalf of his clients, after consultation with Judge Francis, who represented the purchasers, undertook the preparation of the tentative draft of final papers but, as the draft prepared by Judge Short did not, according to the view of Judge Francis, properly interpret the provisions of the offer of purchase, on consultation it was understood that Judge Francis would put his ideas in writing to be later submitted to Judge Short.

Owing to press of business within the next few days after this last consultation, Judge Francis was unable to prepare the paper and, in the meantime, the owners of the properties sold the same to Sablosky and Morris, with whom they were in a lawsuit in which these properties were involved. The sale to Sablosky and Morris abruptly terminated all further efforts of parties to consummate sale to appellee and his associates.

The jury found, in response to special issues submitted by the court, that Mrs. Hassell and Mrs. Patterson, respectively, owned, in their separate right, interest in these properties; that the defendants, through their agent U. F. Short, listed the same with appellee for sale; that appellee procured purchasers who were ready, able, and willing to buy upon terms acceptable to appellants; that appellants, through their said agent,

agreed to pay appellee a commission of $5,-000 for his services.

On these findings the court rendered judgment for appellee against appellants for $5,-000, with 6 per cent. interest from January 31, 1922.

Appellants contend by appropriate assignments and propositions that the court erred in refusing, at their request, to direct the jury to render a verdict in their favor. This assignment calls in question the sufficiency of the evidence to sustain the verdict of the jury and the judgment of the court.

[2] The salient facts stated above, in our opinion, fully sustain the verdict and judgment. The case, when stripped of all surplusage, is simple, and the determining question controlled by well-known rules of law.

[3] The doctrine recognized everywhere is that a broker employed to find a purchaser is entitled to his commission or fee when the purchaser is able, ready, and willing to take the property on terms specified by the owner, even though no sale is consummated; that the owner cannot defeat the broker's right to compensation by refusing to enter into a contract with the purchaser; nor is the broker's right to compensation defeated because the owner is unable to consummate the transaction on account of having sold the property to another. 9 C. J. 595, 598.

In the case of Baldwin v. Smith (Tex. Civ. App.) 119 S. W. 111, the following charge on this question was approved:.

"When property has been listed with a real estate agent for sale, and he procures a purchaser, ready, able, and willing to buy upon terms agreed to by the owner of the property, the agent is then entitled to his commission, although a sale may never be made, owing to the inability of the owner of the property to complete the contract."

This doctrine has been announced over and over again by the appellate courts of this state. See Hamburger v. Thomas (Tex. Civ. App.) 118 S. W. 770; Id., 103 Tex. 284, 124 S. W. 561; Lanham v. Cockrell, 108 Tex. 405, 194 S. W. 936; McLane v. Petty (Tex. Civ. App.) 159 S. W. 891; Gibson v. Gray, 17 Tex. Civ. App. 646, 43 S. W. 922.

As shown by this record, appellee was diligent and resourceful in efforts to procure purchasers for these properties. He produced purchasers ready, able, and willing to take the property on terms agreeable to the owners. While conferences between their respective attorneys were in progress, looking to the preparation of final papers carrying into effect the terms of the contract of sale, appellants sold the properties to other parties, and thus put it out of their power to consummate the sale negotiated by appellee. Appellants were exclusively at fault, and will not now be permitted to take advantage of their own wrong as a defense against the demand of appellee for compensation fairly earned.

[4] In our opinion there is nothing in appellant's contention that no binding contract was ever entered into. The written offer of January 10, 1922, when accepted by appellants, became a contract. This document possessed all the elements of a valid contract, to wit, parties, subject-matter, consideration, mutuality of agreement, and mutuality of obligation, and nothing remained to be done after its acceptance but to translate it into performance. It is true that the proposed purchasers of these properties would not have closed the deal or paid their money unless and until they received the approval of the Texas League and the National Association but upon whom did the obligation rest to secure this approval? Did it rest upon the sellers or upon the purchasers? The agreement hereinbefore copied, in our opinion, answers the query. Neither the appellants nor the Dallas Athletic Association owned, or could have sold, this franchise, yet they were not prohibited from agreeing to procure it for the purchasers, which in fact they did as we construe the contract. This franchise was the very soul of this baseball enterprise, without which the other property was of little value.

Appellee, having produced purchasers ready, able, and willing to buy the properties on terms agreed to by appellants, is entitled to recover his compensation, even though we had concluded (which we have not done) that a binding contract did not exist. In such a situation, it is the readiness, the ability, and the willingness of the purchaser, notwithstanding the contract may not be binding, that challenges the owners of the property to proceed, and that determines the right of the broker to his compensation.

After carefully considering appellants' assignments and propositions, because we find no reversible error, the judgment of the trial court is affirmed.

Affirmed.