**JOSEPH v. BOSTICK.**    (No. 707–4267.)

(Commission of Appeals of Texas, Section A. Oct. 28, 1925.)

1. Brokers ⬡63(1)—Option contract and broker's agreement for compensation held to be merely contract to contract in future, and where negotiations failed over question of assignability of option, there was no liability.

Where defendant executed "option contract" providing "form of lease was to be agreed upon by parties," and "was to contain such conditions as in opinion of grantor shall fully protect him," and made collateral agreement to pay plaintiff broker $5,000 commission if broker found person willing and able to make lease in accordance with terms of option agreement, *held* that such later agreement was indissolubly linked with and dependent on option contract, and either both together or taken separately amounted to nothing more than a contract to make a contract in the future, which could be enforced neither at law or in equity; and hence, where negotiation failed over preliminary question of assignability of option, there was no agreement to accept.

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Contracts ⬤➾147(1)—Court may imply provision of contract only to arrive at true intent of parties.**

A court may only imply a provision in a contract to arrive at and enforce true intent of parties, and it cannot deduce a term in flagrant defiance of a clear, expressed intent.

**3. Brokers ⬤➾63(1) — Conditions of contract excluded any implication that defendant impliedly agreed to lease property on reasonable terms.**

Where defendant did not engage plaintiff as a broker, but engaged him to procure such a lessee as would be willing and able to accept the terms to be agreed upon, such conditions excluded any implication that defendant impliedly agreed to lease property on reasonable terms.

**4. Brokers ⬤➾63(1)—Capriciousness of party in requirements under option contract could not affect liability for commission under collateral agreement, where option contract and agreement amounted merely to agreement to contract in future.**

Option contract, providing that lease was to contain such conditions as grantor saw fit, and collateral agreement to pay commission to plaintiff on his procuring one willing to take lease in accordance with its terms being unenforceable as being merely an agreement to contract in the future, *held*, it follows that that question of whether the party making such option contract acted capriciously in his requirements thereunder was immaterial, and could not affect his liability under collateral agreement, since negotiations had not reached stage giving him opportunity to be capricious.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by John Bostick, Jr., against Sam A. Joseph. From a judgment of the Civil Court of Appeals (264 S. W. 129), reforming and affirming a judgment for plaintiff entered by the trial court, defendant brings error. Reversed, and judgment entered for defendant.

McLean, Scott & McLean, Jno. W. Wray, and Wray & Mayer, all of Fort Worth, for plaintiff in error.

Capps, Cantey, Hanger & Short, W. D. Smith, and Alfred McKnight, all of Fort Worth, for defendant in error.

### Statement.

NICKELS, J. May —, 1919, Sam A. Joseph, owner of a certain lot, and John Bostick, Jr., real estate broker, executed a paper, wherein it was declared the owner gave the broker an "option" on the lot; the "option" to expire June 10, 1919, "unless availed of" by Bostick "or his assigns" by that time. The method of "availing of" the "option," as provided, was this: "The parties" were then "to enter into a lease" contract for a term of 99 years, and the lease contract was to have terms, conditions, etc., as follows:

(a) Annual rental of $12,000, payable monthly.

(b) Others thus described:

"The standard lease, if such there be, used in the city of New York for the leasing of business property for long terms shall be the form of the lease to be agreed upon and accepted by the parties hereto, with such modifications as local conditions require, and must contain such conditions and provisions as in the opinion of the grantor shall fully protect him in all his rights in the matters and things pertaining to the said leasehold, and this option is granted upon the condition that in its finality such a lease shall be executed by the said Bostick, his assigns or assignees, and the grantor herein, as shall be just, and in the opinion of the grantor adequate and sufficient to protect him in all his rights, benefits and privileges flowing out of the proposition to lease, and also in the construction and erection of the proposed improvements to be erected and constructed upon the premises herein described."

And (c) still others thus provided for:

"Nothing in this option contained shall in any manner or way modify or deprive the right of the grantor to have the proposed lease express all conditions, covenants and agreements that he believes are necessary and requisite to fully and adequately protect him in all his rights, privileges and benefits."

If the lease contract should be made, then, according to other terms of the "option":

(a) Lessees should erect on the lot, beginning not later than 14 months after the execution of the "aforedescribed proposed lease," a six-story building, etc.

(b) Joseph, "at his option," might "deliver the possession of the said premises within 8 months from the date of the execution of the proposed lease."

(c) "As a condition precedent to the execution of the proposed lease," Bostick, or his assigns, should deposit (in Liberty bonds) $50,000 in a named bank to assure erection of the building, etc.

January 17, 1920, Bostick instituted this suit against Joseph. To his petition (as a part thereof) a copy of the paper above described was attached. The execution and effect of the "option" was alleged, but since the terms of the instrument (there being no averment or proof of fraud or mistake in its execution) control allegations of their effect, those averments need not be further stated. Except for the terms of the "option" itself (thus pleaded), the basic allegations are these:

(a) "Plaintiff would further represent that at the time of execution of said option contract between plaintiff and defendant it was understood between plaintiff and defendant, and it was not contemplated that this defendant would execute the lease with said defendant nor that this plaintiff was to erect the building aforesaid, but it was the under-

standing and agreement that plaintiff, in his capacity as a real estate dealer, was to dispose of said option of lease to other parties, to be found by plaintiff, and that if plaintiff did so find such parties, able and willing to make said lease and to erect said building, in accordance with the terms of said contract, that said defendant would pay to this plaintiff a commission of $5,000, the same to be the compensation and profit to this plaintiff, for the securing of a lease and the execution of a lease, with said defendant, in accordance with the terms of said written contract."

(b) "Plaintiff would further represent that in accordance with said contract and agreement with said defendant, this plaintiff did secure lessees who were willing and able to take over the option given by said defendant to this plaintiff, and to execute a lease in accordance with the terms of said contract, and to erect the building on said premises, as contemplated therein, said parties being, to wit, Ramsey Bros. Dry Goods Company," etc.

(c) That he and Ramsey Bros. "requested of said defendant the execution of a lease covering said premises, in accordance with the terms of said contract, but that said defendant failed and refused * * * to execute a lease, in accordance with the terms of said contract."

(d) Plaintiff, "in securing an assignee and lessee, able and willing to undertake the carrying out of the terms of the proposed lease," performed "all that was required of him, in accordance with the terms of his agreement with said defendant, for the payment of a commission of $5,000 to this plaintiff," and that "by reason of the failure of said defendant to execute a lease to the lessee as procured by plaintiff, the said defendant has became obligated to pay" the commission, but that defendant has failed and refused to pay same despite demand therefor, "by reason of which this plaintiff has been damaged in the sum of $5,000, for which he now sues," and judgment therefor is prayed.

February 26, 1923, Bostick filed an amended petition in which the original averments were reproduced, and in which new matter was set up as follows:

"For further cause of action, the plaintiff would show to the court that the defendant employed the plaintiff as a real estate agent for the purpose of placing the option contract with purchasers ready, willing, and able to accept same, and make the lease contract, as contemplated thereby, and said lessee or their assignees carry out the provisions of the said lease contract; that the plaintiff did procure purchasers who accepted, or attempted to accept said option, and the defendant failed and refused to carry out the terms of said option agreement and execute the lease; that plaintiff fully performed all of the services contemplated to and agreed to be performed, and that the reasonable value of said services were the sum of, to wit, $5,000, for which plaintiff is duly and legally bound."

On exceptions, this new matter was stricken out on the ground that the cause of action there asserted (on the quantum meruit) for the first time was barred by limitations.

By supplemental petition Bostick elaborated what was left of his amended petition by charging that Joseph, in connection with his refusal to make a lease to Ramsey Bros., "attempted to impose some unreasonable provision in the acceptance of said lease, and some term or provision not contemplated by the parties at the time of the execution of the option contract," and thereby breached his contract with him (Bostick), and, further, immediately after this breach "plaintiff did, on or about the same date, for his said assignees or purchasers, accept in writing all of the provisions of said option and tendered full performance thereof, which was refused and rejected by the defendant."

Quantum meruit having, as shown, gone out of the case, Joseph defended with a general denial, statute of frauds, and allegations that he did all he was required to do by the contract, and that he was at all times ready to negotiate with Ramsey Bros. and Bostick in an effort to reach agreement upon the terms of a lease.

The evidence lacks much of showing the truth of some of Bostick's averments, but for present purposes it is assumed to be sufficient to support each of them. However, there was neither pleading nor proof showing or tending to show whether there was a "standard lease" in use in "New York," or its terms and conditions if such there be. The proof shows that no agreement was ever reached as to the form, terms, or conditions of the lease except those specifically named in the "option contract."

Joseph duly presented his request for peremptory instruction in his favor, and this was refused. The case was then submitted to the jury on special issues, and on the answers judgment was rendered for Bostick, against Joseph, for the amount sued for.

On appeal, the case was transferred to the Court of Civil Appeals for the Fourth district, and the judgment was there affirmed. 264 S. W. 129. Error in the refusal to submit the peremptory instruction was, and is, duly assigned, and the case is before the Supreme Court on that question.

### Opinion.

[1] Bostick's claim, advanced in and restricted by the pleading, is this: (a) Joseph executed the paper, called "option contract"; (b) by collateral agreement Joseph promised to pay him $5,000 if he found persons able and willing to take a lease as provided in the "option contract" "in accordance" therewith; (c) he found such persons; and (d) Joseph

refused to make "a lease in accordance with the terms" of the "option contract." Obviously, the "option contract," then, is imported into and controls the "agreement" upon which he sued. The case must turn on the meaning and effect, or lack of effect, of the "option contract."

Amongst the terms of the "option contract" are these:

(a) "The standard lease, if such there be, used in the city of New York for the leasing of business property for long terms shall be the form of lease to be agreed upon and accepted by the parties thereto, with such modifications as local conditions require, and must contain such conditions and provisions as in the opinion of the grantor shall fully protect him in all his rights in the matters and things pertaining to the said leasehold, and this option is granted upon the condition that in its finality such a lease shall be executed by the said Bostick, his assignee or assignees, and the grantor herein, as shall be just, and in the opinion of the grantor adequate and sufficient to protect him in all his rights, benefits, and privileges flowing out of the proposition to lease, and also in the construction of the proposed improvements to be erected and constructed upon the premises."

(b) "Nothing in this option contained shall in any manner or way modify or deprive the right of the grantor to have the proposed lease express all of the conditions, covenants, and agreements that he believes are necessary and requisite to fully and adequately protect him in all his rights, privileges, and benefits."

And (c) such stipulations as make all things else in the paper relate to and become dependent upon the happening of the future "agreements" just named; that is to say, the performance of anything and of everything else is expressly suspended and pretermitted. Manifestly, it would not be possible for Bostick, Ramsey Bros., or anybody else, to be ready, able, and willing to accept or make a lease "in accordance with the terms of the contract," unless and until Joseph should name the terms to which he would agree. Nor would it be possible for Joseph to make a lease "in accordance with the terms of said contract" pending agreement by him and the prospective tenants as to what should go into the lease. There was never any agreement on the terms, etc., of the lease itself; in fact the matter never progressed to a point where Joseph ever stated, or was called upon to state, what terms, etc., he would accept. The contra is not even averred, and the proof is conclusive that the essential fact of "agreement" does not exist. The proof is that the negotiations "blew up," if we may borrow the language of a witness, about a preliminary discussion of the assignability of the "option" itself, and they were never resumed.

It results that Bostick, dealing at arm's length, entered into an arrangement whereby his right to compensation was made wholly contingent, and the event provided for never came to pass. His so-called agreement for compensation, by pleading and proof, is indissolubly linked to the "option contract," and all of the uncertainties and incompleteness of the one inheres also in the other. Neither (or both together) is enforceable in equity or sufficient in law to afford basis for a right of action. Either, or both, amounts to nothing more "than a contract to make a contract, in the future, if the parties can then agree to contract." Weeghan v. Killefer (D. C.) 215 F. 170; Williams v. Phelps (Tex. Civ. App.) 171 S. W. 1100; Hume v. Bogle (Tex. Civ. App.) 204 S. W. 673; Gordon v. Emerson Shoe Co. (Tex. Civ. App.) 242 S. W. 795; Cold Blast Transp. Co. v. Nut & Bolt Co., 114 F. 77, 52 C. C. A. 25, 57 L. R. A. 696; Rutland Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955; Metropolitan Ex. Co. v. Ewing (C. C.) 42 F. 198, 7 L. R. A. 381; Bijur Co. v. Eclipse Co., 243 F. 604, 156 C. C. A. 298; Manning v. Ayers, 23 C. C. A. 405, 77 F. 690; Stagg v. Compton, 81 Ind. 171; 9 Cyc. 245; Elliott on Contracts, vol. 1, § 175. This is not a case where the broker has found a purchaser who fails to buy purely because the owner fails to do something which he is legally bound to do, such as the Court of Civil Appeals had in mind, or such as was involved in either of the authorities cited by defendant in error; i. e. Hamburger & Dreyling v. Thomas, 103 Tex. 280, 126 S. W. 561; Gilliam v. Jones (Tex. Civ. App.) 225 S. W. 417; Williams v. Atkinson (Tex. Civ. App.) 214 S. W. 504; Levy v. Duncan Realty Co. (Tex. Civ. App.) 178 S. W. 984; Carson v. Brown (Tex. Civ. App.) 229 S. W. 673; Villareal v. Passmore (Tex. Civ. App.) 145 S. W. 1086; Cotten v. Willingham (Tex. Civ. App.) 232 S. W. 572; and Henderson v. Gilbert (Tex. Civ. App.) 171 S. W. 308. The Court of Civil Appeals had in mind a situation where the landowner had refused to do something which he was legally bound to do, and therefore was "at fault" in causing the sale, etc., to be prevented; and such was the situation in each of the cases cited. But this is a case where the owner did not obligate himself to do anything which he might not, in the future, desire not to do, and where, as a consequence, he was within his rights, and not "at fault," if he did or refused to do all and everything charged to him.

The opposing view is urged upon us as strongly as it could be stated in these excerpts from Bostick's written argument:

"Defendant in error has sued for his agreed commission of $5,000 upon the theory that he procured lessees ready, willing, and able to execute a lease upon the terms first proposed by the plaintiff in error, and that plaintiff in error by his own act in requiring that this new and unreasonable provision be inserted in the

lease prevented the defendant in error from completing the lease contract.

"We submit that when the plaintiff in error engaged the defendant in error as a broker to procure a lessee for this property he impliedly engaged that he was willing to lease the property upon reasonable terms.

"In determining the meaning of this provision" [that is, of Joseph's right to state such terms as, in his opinion, would "adequately protect his rights"] "we are to look to the contract as a whole—we are to consider all of its terms. Taking the contract as a whole, it is obvious that the plaintiff in error desired to lease his property and had employed the defendant in error to secure a lessee."

[2, 3] But Bostick did not sue in respect to "terms first proposed" by Joseph; he sued in view of the "terms" which were embodied in the (written) "option contract" giving Joseph the power to name the lease terms in the future, and according to his then desires. The suit on the quantum meruit, when set up, was barred by limitation, and went out of the case on exceptions. Nor did Joseph "engage" Bostick generally "as a broker" or to procure "a lessee"; he "engaged" him, on the contingencies named, to procure such "a lessee" as would be able and willing to accept the terms to be "agreed upon"; that being the only kind of lessee he desired. And further, these conditions are so plainly declared on the paper as to exclude contra-implications. A court, in any event, may only imply a provision in a contract in order to arrive at and enforce the true intent of the parties; it cannot ever deduce a term in flagrant defiance of an intent clearly expressed. There is here no room for interpolating into the arrangement, by construction, a term not there, and whose existence there is expressly negatived.

[4] Nor does the supposed capricious nature of Joseph's conduct affect the question. There is no proof that he was capricious. All the proof about the supposed requirement of nonassignability related solely to the "option contract" itself, and had no reference to the "lease" which might have been made. If, however, Joseph had required nonassignability in the lease itself, he would have gone no further than the statutes pertaining to the matter go in the absence of agreement to the contrary. It would be difficult to establish, as a matter of law, that a requirement prescribed by the statute itself is arbitrary unless waived by the citizen for whose benefit it was made. But the negotiations did not advance far enough to give Joseph an opportunity to be capricious about the terms of the lease, if such had been his temperament. And the right to be capricious in extending, or declining to extend, an "offer" is amongst that ancient liberty which antedates all Constitutions, statutes, and ordinances. Its remote origin is in moral agency, and so far

courts and kingdoms have not throttled it or restricted its range. Joseph and Bostick, so far as the record indicates, were able-minded. They dealt with full understanding of what they were doing and of the effect, or rather noneffect, of their act. The one extended an "offer" expressly conditioned upon retention of sole power of arbitrament; the other accepted the "offer" thus restricted. Indicia of fraud, mistake, or accident do not exist. And, as they dealt, they remain bound.

We recommend a reversal of the judgments of the district court and Court of Civil Appeals, and the rendition of judgment in favor of Joseph.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed; and judgment rendered for the plaintiff in error.